UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **EDNY TASSY.,**<br><br>    **Plaintiffs,**<br><br>v.<br><br>**STRYKER HOWMEDICA OSTEONICS a/k/a,**<br>**STRYKER HOWMEDICA OSTEONICS CORP.**<br><br>    **Defendant.** | 03-CV-6099 (WJM)<br><br><br><br>**OPINION**<br><br>**HON. WILLIAM J. MARTINI** |

Lydia B. Cotz
Cotz & Cotz, Esqs.
180 Franklin Turnpike
Mahwah, NJ 07430

    *(Attorney for Plaintiff)*

Geoffrey W. Castillo, and
Lauri A. Mazzuchetti
Kelley, Drye & Warren LLP
200 Kimball Drive
Parsippany, NJ 07054

    *(Attorneys for Defendant)*

**MARTINI, U.S.D.J.:**

    This matter comes before the Court on Defendant Stryker Howmedica Osteonic's, d/b/a Stryker Orthopaedics' ("Stryker"), motion for summary judgment to dismiss Plaintiff Edny Tassy's ("Tassy") employment discrimination action under 42 U.S.C. § 2000e ("Title VII"), 42 U.S.C. § 1981 ("Section 1981") and the New Jersey Law Against Discrimination (N.J.S.A. 10:5-1 *et seq*). ("N.J.L.A.D."). There was no oral argument. Fed. R. Civ. P. 78. For the reasons set forth below, Stryker's motion is **GRANTED** and Tassy's Complaint is **DISMISSED WITH**

**PREJUDICE** in its entirety.

## BACKGROUND[1]

Stryker manufactures medical implant devices, such as knees, hips and spines. Tassy is an African-American male. In 1989, Stryker hired Tassy as a Polisher on the night shift at the company's plant in Allendale, New Jersey. In this role, Tassy polished "caps and heads" to be incorporated into hip implants. *See* Compl. ¶ 3; Rule 56.1 Statement in Support of Defendant's Motion for Summary Judgment ¶ 28 (*hereinafter* Deft's Rule 56.1 St.). Tassy claims that from the beginning of his employment at Stryker, Caucasian employees received more and better training than him. *See* Compl. ¶ 3. Tassy does not specify what training, though, he did not receive. Tassy, however, concedes that he did receive some on the job training. In particular, he states that he received training on how to mix "slurry" and polish pieces in 1989. *Id*. In addition, he concedes that a co-worker trained him on buffing from 1990 to 1991 when business was slow. *Id*.[2]

Throughout Tassy's tenure at Stryker, his personal record is replete with unsatisfactory performance appraisals. For instance, Tassy's initial performance appraisal from 1989 rated him as "Needs Improvement" regarding "knowledge of work" and "initiative." *See* Declaration of

---

[1]The following constitutes the relevant facts in this case, as culled from Stryker's Rule 56.1 statement of undisputed material facts, the complaint, Tassy's briefs, and supporting affidavits and exhibits. Tassy did not submit a statement identifying material facts as to which there does or does not exist a genuine issue. D.N.J. CIV. R. 56.1. Where a plaintiff has not submitted a Rule 56.1 statement, the court will treat the facts in defendant's Rule 56.1 statement as admitted unless controverted in the plaintiff's briefs or contradicted by the evidence. *See Longoria v. New Jersey*, 168 F. Supp. 2d 308, 312 n.1 (D.N.J. 2001); *Maertin v. Armstrong World Indus.*, No. 95-2849, 2000 U.S. Dist. LEXIS 5857, at *4 n.1 (D.N.J. May 3, 2000).

[2]The undisputed facts also show that Tassy received training in various other matters pursuant to company policy. *See* Deft's Rule 56.1 St. ¶¶ 103-07.

Lauri A. Mazzuchetti, Exh. E (*hereinafter* LM Decl.).  In addition, Tassy received written warnings in 1989 and 1990 for absences and tardiness.  *See id.*  As a result of these warnings, Stryker placed Tassy on a 90-day probationary period in 1990.  *Id.* at Exh. F.

In 1991, Tassy applied for the first of six positions he sought while at Stryker.  *Id.* at ¶ 4; *See* LM Decl. Exh Z.  The position he sought was in the Grinding Department.  *Id.*  Stryker offered Tassy the positon, which he accepted.  *Id.*  While in the Grinding Department, Tassy claims that another employee trained him on grinding "from time to time" and that he received "minimal instruction on grinding" in 1994.  *See* Compl. ¶ 4.  Again, Tassy received some adverse appraisals during this time.  For instance, Tassy's initial performance appraisals for 1991 rated him as "Needs Improvement" regarding "quality of work" and his 1991 performance appraisal noted that his rework rate was "high."[3]  *See* LM Decl. Exh. E.

In 1994, Stryker relocated its manufacturing facility to Mahwah, New Jersey.  At Mahwah, Stryker divided its manufacturing processes into "cells."  *See* Compl. ¶ 5; Deft's Rule 56.1 St. ¶ 11.  Under this approach, each cell is responsible for a different aspect of the manufacturing process.  *See* Deft's Rule 56.1 St. ¶ 11.  The cells are composed of "team-members" with the title of "Fabrication Specialist" or "Generalist" and are led by a Team Leader who reports to the Steering Team.[4]  *Id.* at ¶¶ 13, 19.  Tassy worked as a Generalist in the UHR/Acetabular Cell, which produces hip implants.  *Id.* at ¶¶ 35, 37.  He remained a Generalist in this cell until termination.  *See id.* at ¶ 15; Pl. Opp. at 1-2; Deft's Rule 56.1 St. ¶ 37.  During

---

[3]An employee's rework rate is the rate in which their product needs corrections after completion.

[4]Tassy never applied for the position of Fabrication Specialist and does not claim he was denied a promotion to that position.  Deft's Rule 56.1 St. ¶ 11 at ¶ 16.

the beginning of his stay at Stryker's Mahwah facility, Tassy alleges that he requested further training and a promotion to the level of "Machinist" but was denied such requests.  *See* Compl. ¶ 6.  In response, Stryker contends that Tassy received the same training as every other employee and, regardless, there is no "Machinist" position at the company.  Deft's Rule 56.1 St. ¶ 17.[5]

In 1996, Tassy made his second application for a different position.  *See* LM Decl. Exh. Z.  He applied for a team member position in another cell.  *See id*.  Tassy's request was denied.  *Id*.  Then, from 1997 to 1998, Tassy applied for four more positions in various cells.[6]  *See* LM Decl. Exh. Z; LM Decl. Exh. D at 61:13-62:22.  The last job he applied for was "Generalist-Machinist" in the "Cap Cell" on August 3, 1998.  *See* LM Decl. Exh. Z.  All of Tassy's requests were in response to "job postings" located in different cells where everyone could observe which jobs were available.  *See* Compl. ¶ 6.[7]

Tassy's employment record after Stryker's relocation to Mahwah again exhibits certain performance deficiencies.  For example, a 1996 Team Member Feedback Form rated Tassy's performance "below expectations" in terms of "team skills," "quantity and quality" and

---

[5]Stryker also implemented a "Skill-Based Pay" training program in 1994.  Deft's Rule 56.1 St. ¶ 22.  This program requires each team member to be cross-trained in all aspects of the manufacturing process, even though each team member generally performs specified functions.  *Id.* at ¶ 23.  As part of this training, each team member receives "Core Skills Training" within twelve months of their date of hire.  *Id.* at ¶ 26.  Thereafter, each team member must receive training on two new "Skill Blocks" each year.  *Id*.  Team members employed prior to 1994, such as Tassy, received Core Skills Training in 1994.  *Id.* at ¶ 27.  Tassy does not claim that he failed to receive this training.

[6]The promotion Tassy received was in 1989, when Stryker transferred him to the Grinding Department.  *See* LM Decl. Exh. Z.

[7]As mentioned earlier, the one job Tassy did receive was his transfer into the Grinding Department in 1991.

4

"customer focus." *See* LM Decl. Exh. G.  As a result of this unsatisfactory review, Tassy was reviewed again.  *See* LM Decl. Exh. H.  This time, he was rated as "meeting team expectations" in terms of "quality and quantity" and "customer focus," but "below team expectations" in terms of "team skills."  *Id*.

Tassy also received a verbal warning in February 1996 for quality deficiencies.  *See id.* at Exh. J.  The warning stated that any further unsatisfactory performance would result in a suspension.  *Id*.  Then, in April 1997, Tassy received another verbal warning for approving an implant for final inspection without identifying the proper identification number of the implant.  *See id.*, at Exh. J.  This constituted a quality error because the FDA requires product traceability.  Deft's Rule 56.1 St. ¶ 48.

In 1999, Stryker placed Tassy on the day shift.  *See* Compl. ¶ 8.  According to Tassy, he agreed to the move because Stryker promised more and better training.  *Id*.  Tassy claims, though, that he never received training as promised.  *Id*.  Furthermore, Tassy claims that when he sought additional training, his efforts were frustrated.  *Id*. at ¶ 9.  The only instance Tassy points out to substantiate this claim is an instance where another individual tried to explain to Tassy how to fix a grinding machine, and a man by the name of "Mr Camacho" told the individual not to instruct Tassy further.  *Id*.

Over the next two years, Tassy received more adverse performance appraisals.  In January 2000, Tassy received a written warning for three quality problems occurring over three days.  *See* LM Decl. Exh. L.  The report stated that, as a result, Tassy would be retrained in all aspects of the quality problems at issue in the warning.  *See id*.  In addition, the report stated that future occurrences of the same quality problems would result in suspensions.  *See id*.  Three months

later, in March 2000, a Team Member Feedback Form rated Tassy's performance "below team expectations" in terms of "quantity and quality." *See* LM Decl. Exh. M. Furthermore, Tassy's Annual Review for that year also stated that "[Tassy] generated the highest scrap rate of any ... team member," "[Tassy's] performance has needed constant monitoring and has required several discussions about his lack of productivity," "[Tassy] did not generate quality product on a consistent basis...," "[Tassy] does not maintain a consistent level of production that meets team expectations," and so forth. *See id*.

Later that year, in June 2000, a Caucasian employee that Tassy was training damaged a device. Compl. ¶ 12.a. Tassy claims that he was deemed responsible and suspended when the broken part was discovered. *Id*. According to Tassy, other white employees made similar errors and were not suspended or disciplined. *Id*. Then, in December 2000, Tassy received a verbal warning for excessive late arrivals. *See* LM Decl. Exh. N. The record of verbal warning stated that Stryker's electronic swiping system, which recorded Tassy's entry into its facility, differed from the submissions on his time sheets. *See id*. Tassy was warned that "further occurrences against the attendance/absenteeism policy [would] result in further disciplinary action." *See id*.

A year later, in 2001, Stryker received a "Product Experience Report" from an orthopedic surgeon indicating that a bipolar hip prosthesis manufactured by Stryker failed after it was implanted into the patient. *See* LM Decl. Exh. O. Stryker conducted an investigation of the product's router – the system it uses to trace the manufacturing of implants – and determined that the defect was directly traceable to work performed by Tassy. *See id*. Consequently, Stryker suspended Tassy for three days. *See id*. The warning report documenting this issue stated that "[a]ny future occurrences of this nature [would] result in further disciplinary action up to and

including termination." *See id*.

  Then, in December 2001, Tassy signed a router indicating that he completed the "laser mark" operation for twenty-one implants. *See* LM Decl. Exh. P. Tassy, however, did not actually laser mark the implants because the laser in his cell was not working that day. *See* Deft's Rule 56.1 St. ¶ 69; LM Dcl. Exh. P. Tassy claims that he asked another employee in a different cell to use his laser, but his request was denied. Compl. ¶ 12.b. A record of written warning documenting this issue stated that Tassy left the signed paperwork with the unmarked parts and told a second shift operator to mark the parts as soon as the laser was operational. *See* LM Decl. Exh. P. According to the report, this constituted a major quality violation. *See id*. As a result, Stryker suspended Tassy for three days. *See id*. In addition, Stryker placed Tassy on a second 90-day performance improvement plan. *See id*.

  In September 2002, Tassy was working on an implant device without a visible core number, which indicates the size of the part. *See* Compl. ¶ 14; Pl. Opp. at 5-6. Tassy undertook an operation called "stoning" to uncover the part's size, but the number was still not visible. *See id*. Tassy then proceeded to write the size of the part on the inside with a black magic marker. *See id*. After writing the size on the part, he placed it on a rack for the next employee to work on it, where it was eventually discovered. *See id.*; Deft's Rule 56.1 St. ¶ 77. This action, according to Stryker, violated the company's quality procedures and FDA standards because it compromised the sterility of the piece. *See* Deft's Rule 56.1 St. ¶ 79; Pl. Opp. at 3. In response, Tassy claims that the marker was provided for the purpose of marking pieces and that marking pieces was a common practice at Stryker. Compl. ¶ 3; Pl. Opp. at 6. Tassy also contends that the person who was supposed to grind the part was responsible for removing the black magic marker

7

but failed to do so. Compl. ¶ 14. Finally, Tassy claims that other white employees marked pieces with magic markers without being disciplined. Compl. ¶ 14; Pl. Opp. 6.

Stryker fired Tassy on September 9, 2002. Compl. ¶ 14; Deft's Rule 56.1 St. ¶ 80. Tassy subsequently sued Stryker on December 23, 2003, under Title VII, Section 1981, and the N.J.L.A.B., for failing to train and promote him.[8] Stryker moved for summary judgment to dismiss the complaint. This motion is now before the Court.[9]

## DISCUSSION

### I. Standard of Review

---

[8] The claims for relief in Tassy's complaint fashion this case as involving a failure to train, which resulted in his non-advancement at the company. *See* Comp. ¶¶ 20-22. However, the bulk of Tassy's complaint seemingly bifurcates his claims into a failure to train and promote. *See id.* at ¶¶ 6-7. Accordingly, we will construe Tassy's complaint as setting forth both claims. *See* Fed. R. Civ. P. 8(f) ("All pleading shall be construed as to do substantial justice.").

[9] In Tassy's opposition memoranda, he claims that "his termination was the last of a long series of employment decisions that were racially motivated," and "the stated reasons for Plaintiff's termination were pretextual." *See* Pl. Opp. 3, 6. Stryker construed such statements, along with deposition testimony from Tassy, as raising a claim of wrongful termination. Tassy, however, did not state a claim of wrongful termination in his complaint. Accordingly, the court will not address any claims for wrongful termination by Tassy. *See Spence v. City of Philadelphia*, No. 04-3334, 2005 U.S. Dist. LEXIS 19728, at *8-9 (3d Cir. Sep. 13, 2005); *Swick v. United Parcel Serv.*, No. 02-3254, 2005 U.S. Dist. LEXIS 15630, at *3 n.2 (D.N.J. July 26, 2005). Regardless, even if Tassy had raised an issue of wrongful termination in his complaint, the facts clearly show that such a claim would not be sustained.

Furthermore, Tassy alleges in his complaint that Stryker had a pattern and practice of not hiring, training, or promoting minorities, and of applying discipline more aggressively and harshly to minority employees. *See* Compl. ¶¶ 16-19. Tassy, however, does not address this issue in his opposition memorandum to Stryker's motion for summary judgment. *See generally*, Pl. Opp. Nevertheless, even if Tassy did raise a claim based on a "pattern and practice" of discrimination, this court would dismiss such an allegation because Tassy only alleged discrete acts of individual discrimination. *See Sperling v. Hoffman-La Roche, Inc.*, 924 F. Supp. 1346, 1357-058 (D.N.J. 1996). Nor has Tassy introduced any evidence showing that discrimination was Stryker's "standard operating procedure." *See Berry v. Jacobs IMC, LLC*, 99 Fed. Appx. 405, 410 (3d Cir. 2004).

Summary judgment eliminates unfounded claims without recourse to a costly and lengthy trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A court should grant summary judgment, however, only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Once the moving party has made a properly supported motion for summary judgment, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). No issue for trial exists unless the nonmoving party can demonstrate sufficient evidence favoring it such that a reasonable jury could return a verdict in that party's favor. *See id*. at 249. Unsworn assertions by the non-moving party that contradict sworn and proper affidavits submitted by the moving party will not create a material issue of fact. *See Fireman's Ins. Co. of Newark, N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

**II.     The *McDonnell Douglas* Burden-Shifting Analysis**

The Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) established the burden shifting framework by which courts analyze cases of discrimination under Title VII, Section 1981 and the N.J.L.A.D. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989); Williams *v. Rohm & Haas Co.*, 90 Fed. Appx. 627, 629 (3d Cir. 2004); *Lehman v. Toys 'R' Us, Inc.*, 132 N.J. 587, 600-01 (1973). This framework applies to both failure to promote and failure to train claims. *See Bethea v. Ford Motor Co.*, No. 92-844, 1993 U.S. Dist. LEXIS 940, at *20-21 (D.N.J. Jan. 25, 1993).

First, plaintiff has the burden, by a preponderance of the evidence, to make out a prima

facie case of discrimination based on race. *McDonnell Douglas Corp.*, 411 U.S. at 802. Regarding Tassy's failure to promote claim, he must show: (1) he is a member of a protected class; (2) he sought and was qualified for the promotion; (3) he was rejected for the promotion; and (4) a non-member of the protected class was treated more favorably. *See McDonnell Douglas*, 411 U.S. at 802*; Young v. Pennsauken Twp. Sch. Dist.,* 47 Fed. Appx. 160, 161 (3d Cir. 2002). Regarding Tassy's failure to train claim, he must show: (1) he is a member of a protected class; (2) that the employer provided training to its employees; (3) he was eligible for training; (4) a non-member of the protected class was treated more favorably. *See Bethea*, 1993 U.S. Dist. LEXIS 940, at *21; *see also Malacara v. City of Madison*, 224 F.3d 727, 729 (7th Cir. 2002).

If Plaintiff satisfies this initial burden, the burden of going forward shifts to the employer "to produce a 'legitimate, non-discriminatory reason for the employee's rejection.'" *Young*, 47 Fed. Appx. at 161 (quoting *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 252-54 (1981)). This is done by "'introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision.'" *Id.* (quoting *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)).

Once the defendant satisfies this "relatively light burden," the plaintiff "may survive summary judgment" by "produc[ing] sufficient evidence to raise a genuine issue of fact as to whether the employer's proffered reasons were not its true reasons for the challenged employment action." *Sheridan v. E.I. Dupont de Nemours & Co.*, 100 F.3d 1061, 1067 (3d Cir. 1996) (citing *Fuentes*, 32 F.3d at 763). The plaintiff can accomplish this by "pointing to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the [defendant's] articulated legitimate reasons; or (2) believe that an invidious discriminatory

10

reason was more likely than not a motivating or determinative cause of the" defendant's action. *Fuentes*, 32 F.3d at 764. The plaintiff cannot undermine the defendant's legitimate reasons by simply showing that the defendant's "decision was wrong or mistaken." *Id.* at 765. Instead, the plaintiff must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [defendant's] proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence.'" *Id.*

### III. Tassy's Failure To Promote Claim

#### A. Tassy Has Not Set Forth A Prima Facie Case Of Discrimination Based On A Failure To Promote

The Court first turns to the first prong of the *McDonnell Douglas* burden-shifting analysis: whether Tassy set forth a prima facie case of discrimination. Neither side disputes that Tassy is a member of a protected class. In addition, the evidence amply demonstrates that Tassy sought for, and was denied, a promotion on five separate occasions.[10]

Accordingly, Tassy must demonstrate that he was qualified for the promotions at issue. *See Cobb v. Phila. Gas Works,* 118 Fed. Appx. 584, 587 (3d Cir. 2004). The Court evaluates a plaintiff's qualifications for purposes of proving a prima facie case by looking at objective standards. *See Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.3d 509, 523 (3d Cir. 1992); *Weldon v. Kraft, Inc.*, 896 F.2d 793, 798 (3d Cir.1990). From 1989 to 1998, Tassy applied for

---

[10]Stryker argues that Tassy did not actually seek a "promotion" when he applied for his various positions within the company. *See* Deft's. SJ Memo at 32. Instead, Stryker argues that Tassy was just seeking to become a "Generalist" in different cells and that the jobs he sought did not involve a change of title, salary, or benefits. *Id.* (citing Declaration of Mary Varon ¶ 13 [*hereinafter* Varon Decl.]). Therefore, according to Stryker, Tassy did not suffer an adverse employment decision because he was not passed-over for better positions. Resolution of this issue is not necessary for this motion. Therefore, for the purposes of this motion, we will accept as true that the jobs that Tassy sought were, in fact, promotions.

the positions of Generalist in the Femoral Knee Cell, Tibial Cell, Knee Instrument Cell, and Cap-Cell. *See* LM Decl. Exh. Z. In each case, Tassy's application was denied based on inappropriate experience. *See id.* Tassy, however, does not provide any objective evidence showing that he was qualified for these positions.

Furthermore, Tassy must demonstrate that non-members of his class were treated more favorably regarding the promotions he sought. *See, e.g., Dorsey v. Pittsburgh Assoc.*, 90 Fed. Appx. 636, 639 (3d Cir. 2004). Tassy testified at his deposition that three employees received the position of "Machinist," to which he applied. *See* LM Decl. Exh D 104:12-105:11. Tassy, however, provides no evidence substantiating the claim that these employees were promoted to "Machinist" or even that the position of "Machinist" exists at the company. In fact, Stryker provides unrefuted evidence that all three employees held the same position as Tassy – namely, Generalist. *See* Varon Decl. ¶ 16.[11] Further, Stryker provides evidence that one of the employees Tassy claims was promoted ahead of him was actually African-American. *See* LM Decl. Exh BB. 4:6-10. Therefore, Tassy has not shown that other employees outside his protected class received the position to which he applied.

Accordingly, since Tassy has not satisfied the second and fourth elements of its prima facie case, Tassy has not satisfied the first prong of the *McDonnell Douglas* framework regarding

---

[11]Stryker argues that Tassy testified during his deposition that he was not discriminated against prior to 2000. *See* Defendant's Memorandum of Law in Support of its Motion for Summary Judgment 31 (*hereinafter* Deft's SJ Memo.). Furthermore, Stryker also contends that Tassy did not seek any promotions after 1998. *Id.* Therefore, according to Stryker, Tassy could not have been discriminated against regarding his non-advancement. *Id.*

The Court notes that this argument might have some merit. However, there are certain inconsistencies and ambiguities in Tassy's testimony that would make it inappropriate for the Court, at this time, to construe the evidence as barring Tassy's failure to promote claim.

his failure to promote claim.

      **B.    Stryker Has Set Forth A Legitimate Non-discriminatory Reason For Tassy's Non-Advancement.**

Regardless, even if Tassy had set forth a prima facie case of discrimination based on a failure to promote, Stryker has sufficiently set forth a legitimate non-discriminatory reason for Tassy's non-advancement. As set forth in the background discussion, the record is replete with evidence of Tassy's poor performance at Stryker. From 1989 until his termination, Tassy received performance reviews stating that various aspects of his performance were below company standards. Furthermore, Tassy received repeated warnings regarding his quality and professionalism. Finally, Tassy was suspended on more than one occasion for quality errors, and was ultimately terminated for violating Stryker's standards of sterility, which are quite important for a producer of devices to be implanted into human beings. Furthermore, Tassy does not dispute that each instance of poor performance occurred. This is more than enough evidence needed to establish a legitimate non-discriminatory reason for Tassy's non-advancement.

      **C.    Tassy Fails To Set Forth A Factual Basis From Which A Rational Jury Could Reasonably Infer That Stryker's Proffered Reason For Not Promoting Tassy Is Pretextual**

Tassy also offers no evidence showing that Stryker's reason for his non-advancement – namely, his poor performance – was pretextual and that the real reason was based on racial discrimination. Tassy only provides evidence that there were relatively few Black employees at Stryker, that a Haitian co-worker told him that he would never advance because he was Black, that a Hispanic co-worker told him that he could not operate a plastics machine because he was Black, and that a white co-worker told him that he would remain a utility co-worker forever

because he was black.  *See* Pl. Opp. at 1, 3 and 6.  These statements, however, were not made by Tassy's superiors and do not raise an issue of fact regarding whether Tassy was denied a promotion based on his race.  *Ezold v. Wolf, Block, Schorr, and Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992) ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision.").  Therefore, these statements will not be given great weight.

In sum, neither Tassy's prima facie case nor any of the "evidence" offered by Tassy suggest that Stryker's proffered explanation for Tassy's non-advancement was pretextual.  The Court simply cannot hold that a rational jury possibly could conclude, based only on Tassy's unsupported assertions regarding his non-advancement, that Stryker's proffered reason for failing to promote Tassy is so weak, implausible, inconsistent, incoherent, or contradictory that it is unworthy of credence.  *See Fuentes*, 32 F.3d at 764.  Nor can the Court hold that this rational jury could conclude that the proffered reason was so plainly wrong that it could not have been the real reason.  Having failed to meet his burden, summary judgment will be granted in favor of Stryker as to Tassy's  employment discrimination claim regarding a failure to promote**.**

**III.    Tassy's Failure To Train Claim**

**A.    Tassy Has Not Set Forth a Prima Facie Case Of Discrimination Based On A Failure To Train**

Again, it is undisputed that Tassy is a member of a protected class.  It is also undisputed that Stryker provided training to its employees.  Therefore, the determination of whether Tassy set forth a prima facie case of discrimination turns on whether he was eligible for the training sought and whether non-members of his class were treated more favorably.

Regarding whether Tassy was eligible for the training he sought, Tassy provides no evidence that such was the case. Nowhere in his submissions to this court does he specify the training he was denied, or that others received, nor does he specify that he was eligible to receive such training.[12] Allegations alone are not enough to set forth a prima facie case. *See Taylor v. Cherry Hill Bd. of Educ.*, 85 Fed. Appx. 836, 839 (3d Cir. 2004) ("In the context of discrimination claims, we have explained that conclusory allegations of discrimination, in the absence of particulars, are insufficient to defeat summary judgment.").

Furthermore, Tassy has not shown that other employees outside his protected class received the training he desired. Specifically, Tassy claims that four employees (Messrs. Hup, DeVries, Chojnacki and Compres) received the training he desired. *See* LM Decl. Exh D, 124:7; Pl. Opp. at 2. Tassy, though, has not provided any evidence substantiating this claim. Furthermore, the undisputed evidence offered by Stryker shows that Tassy, in fact, received the same training with at least one of these individuals, who is Caucasian. *Compare* LM Decl. Exh. Y, *with* Deposition Transcript of Anthony J. Hup at 13:24-18:26, 23:13-19. Furthermore, Tassy does not dispute that Stryker did not introduce Core Skills Training until 1994 – the very same year in which Tassy first participated in the training. Varon Decl. ¶¶ 18, 22.

Accordingly, this Court cannot find that Tassy satisfied his burden of setting forth a prima

---

[12]Tassy only points to three instances where he was allegedly denied training. The first occurred in 1999 when Tassy was transferred to the day shift and promised additional training, which he claims he never received. *See* Compl. ¶ 8. The second occurred when, as discussed previously, a man by the name of "Mr. Camacho" instructed another employee to stop training Tassy on how to fix a grinding machine. *See id.* at 9. The third instance occurred when, according to Tassy, he attended Core Skills training only after working at Stryker for a number of years, even though it was offered to all new employees. *See* Pl. Opp. at 4. Tassy also contends, generally, that "[a]ll along, Caucasian received superior and longer training." (Compl. ¶ 3).

facie case of discrimination based on a failure to train. Accordingly, having failed to meet his burden, summary judgment will be granted in favor of Stryker as to Tassy's employment discrimination claim regarding a failure to train.[13]

## CONCLUSION

In light of the foregoing reasons, Defendant's motion for summary judgment is **GRANTED** and Plaintiff's Complaint is **DISMISSED WITH PREJUDICE** in its entirety.


**Dated:** October 7, 2005                     s/ William J. Martini
                                               **William J. Martini, U.S.D.J.**

---

[13] Stryker does not set forth in any of its memoranda a non-discriminatory reason for not providing training to Tassy. Nor has Tassy put forth any arguments, beyond a bare assertion in its opposition memorandum, that any reasons put forth by Stryker for the company's failure to train him are pretextual. Therefore, the court will not assess the merits of these prongs in the *McDonnell Douglas* analysis. Regardless, this matter can be dismissed on the first prong of the *McDonnell Douglas* analysis because Tassy has not set forth a prima facie case of discrimination based on a failure to train.